■ PATRICK N. DWYER, Appellant, v AMALIA E. DE LA TORRE, Respondent. [719 NYS2d 362] —Spain, J. Appeal from an order of

the Supreme Court (Dowd, J.), entered November 19, 1999 in Otsego County, which, *inter alia,* denied plaintiff's motion to hold defendant in contempt for failure to obey a prior visitation order.

Plaintiff and defendant were married in 1979 and are the parents of three children born in 1980, 1981 and 1984. After commencement of an action for divorce in 1995, the parties entered into an open-court stipulation, ultimately incorporated into a judgment of divorce, which provided, among other things, that defendant would have custody of the children and plaintiff would have a specific visitation schedule. In May 1999, plaintiff moved for an order holding defendant in contempt for failure to obey the visitation schedule. Specifically, plaintiff alleged that defendant violated the order by, *inter alia,** planning activities for the parties' youngest child, Liam, during plaintiff's weekly visitation and scheduled summer vacation visitation time. Following a hearing, Supreme Court denied the motion holding that any violation of the order resulted from a lack of communication between plaintiff and the child and could not be attributed to defendant. Plaintiff appeals.

We affirm, albeit on different grounds from those expressed by Supreme Court. "To find that a civil contempt has occurred, it must be determined that the party charged with the contempt had knowledge of and disobeyed a clear, explicit and lawful order of the court and that the offending conduct prejudiced the right of the opposing party [citations omitted]" (*Matter of Daniels v Guntert,* 256 AD2d 940, 942; *see, Matter of Munz v Munz,* 242 AD2d 789; *Matter of Hoglund v Hoglund,* 234 AD2d 794). The visitation order at issue in this case provides, in relevant part, that "[Plaintiff] shall have alternate weekend visitation with the children from Friday after school until Sunday evenings at 8:00 P.M. * * * [as well as] Tuesday evenings with the children from 5:00 P.M. to 8:00 P.M. * * * The children will spend a minimum of two weeks and up to four weeks of vacation with [plaintiff] during the summer. [Plaintiff] shall notify [defendant] in writing at least six weeks in advance of the weeks selected for summer vacation. *There is*

---

* We note that in his motion before Supreme Court plaintiff alleged other violations of the visitation order, including that defendant scheduled their daughter for a driver education course that infringed upon plaintiff's summer vacation plans. Inasmuch as plaintiff's brief makes no specific arguments with respect to these alleged violations, we deem the issues to be abandoned (*see, Matter of Maryann NN.,* 244 AD2d 785, 786, n; *Transamerica Commercial Fin. Corp. v Matthews of Scotia,* 178 AD2d 691, 692, n 1). In any event, were we to consider these issues, we would find plaintiff's allegations to be unsupported by the record.

*[sic] to be no activities scheduled by [defendant] during those weeks. Any activities of the children during those weeks will be arranged by [plaintiff] and each child. * * * There shall be no* scheduling by the parties of activities for the children during the other parties' [sic] time. *Activities during [plaintiff's] time with the children are to be discussed in advance between [plaintiff] and the child and not unilaterally scheduled without notice or input from [plaintiff]. [Plaintiff] agrees to take the child's wishes and desires into consideration regarding approval of the child's participation in requested activities. [Plaintiff] agrees not to unreasonably restrict or prohibit the children's activities*" (emphasis supplied).

It was undisputed that on May 12, 1998, defendant received a letter from plaintiff timely informing her that he intended to exercise his summer vacation visitation "during the last two weeks of July 1998." Defendant testified that several days prior to receiving the letter, she sent a check for a deposit in connection with Liam's registration for a soccer camp in Essex County to begin Sunday, July 12, 1998 and end Friday, July 17, 1998. Defendant acknowledged that although she realized there was a potential conflict, she did not contact plaintiff.

At the end of June 1998, Liam—14 years old at the time— left a message on plaintiff's telephone answering machine informing plaintiff of the activities he had planned for the summer—including soccer camp and an annual hiking trip which was scheduled for the weekend immediately following camp— and that he would be returning home on July 20, 1998 and would then be available to go on vacation with plaintiff. He also offered to make up any visitation time that plaintiff had missed as a result of his attendance at the activities. Unfortunately, plaintiff did not respond to Liam's message. On July 5, 1998, after Liam again attempted—unsuccessfully—to discuss his summer plans with plaintiff, plaintiff informed defendant by telephone that she was in violation of the visitation agreement. He stated that he intended to pick up Liam for his regularly scheduled visitation on Tuesday, July 14, 1998, and for his regularly scheduled weekend visitation beginning Friday, July 17, 1998, which would be followed by a one-week trip to Maine and a subsequent week of summer vacation visitation. Liam thereafter wrote a letter to plaintiff reiterating his summer plans, summarizing his efforts to compromise and indicating his firm intention to attend camp and to participate in the hike. Again, plaintiff failed to respond to Liam's communication.

Defendant testified that although she was aware that Liam's

activities would cause him to miss his scheduled Tuesday and weekend visitation with plaintiff, she nevertheless drove him to soccer camp on July 12, 1998 after Liam informed her that plaintiff had given permission for Liam to attend and had agreed to delay his departure to Maine until Liam's return. Liam returned home on July 20, 1998, packed his belongings and waited, but plaintiff never arrived, having departed for Maine on Friday July 17, 1998 without Liam. Over the next two weeks, plaintiff made no attempt to contact Liam. Although we agree with Supreme Court that the record contains no evidence that defendant intentionally attempted to frustrate visitation between plaintiff and Liam, we nevertheless find that she violated the spirit of the order by unilaterally registering Liam at soccer camp prior to the expiration of the time frame within which plaintiff could select his period of summer visitation, and by failing to notify plaintiff when his May 12, 1998 letter revealed that Liam's activities were clearly in conflict with the visitation and vacation schedule (*cf., Matter of Frandsen v Frandsen*, 190 AD2d 975, 976).

Notwithstanding this determination, Supreme Court's denial of plaintiff's application for a contempt order must be sustained inasmuch as the record does not support a finding that defendant's conduct—standing alone—"defeated, impaired, impeded or prejudiced" plaintiff's visitation rights (*Matter of Ray v Woodman*, 244 AD2d 716, 717; *see, Matter of Hoglund v Hoglund*, 234 AD2d 794, *supra*). Instead, we find that any real prejudice to plaintiff's visitation rights was caused by his own conduct in failing to communicate with Liam, refusing to take Liam's "wishes and desires into consideration" and by unreasonably attempting to prohibit him from attending the activities despite Liam's efforts to compromise. Moreover, plaintiff offered no explanation as to why he never contacted Liam upon his return from Maine to arrange to spend his second designated vacation week with his son. In light of these conclusions, we find no abuse of discretion in Supreme Court's decision not to hold defendant in contempt. Accordingly, plaintiff's argument that he is entitled to counsel fees incurred in connection with his contempt motion must also be rejected.

Crew III, J. P., Peters, Carpinello and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.